UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 15-cr-40012-TSH |
| | ) | |
| DONNA BELANGER, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' MEMORANDUM CONCERNING THE ALLOCUTION AT SENTENCING OF PARENTS OF CHILDREN WHO ATTENDED THE DEFENDANT'S DAY CARE**

The United States of America, by Carmen M. Ortiz, U.S. Attorney, and Mark J. Grady, Assistant U.S. Attorney, hereby submits this memorandum in support of its request that parents of children who attended Donna Belanger's ("Donna") day care be allowed to address the Court at sentencing pursuant to the Crime Victims' Rights Act, 18 U.S.C. §3771 (the "CVRA").[1] Alternatively, even if the Court were to determine that they are not "crime victims" as defined in that statute, this Court has the discretion to accept information from the family members in connection with the sentencing of the defendant pursuant to 18 U.S.C. §3661, and, should do so.

Counsel for the defendant opposes the government's request to allow these parents to allocute at the sentencing. Filed herewith is a joint request to continue the sentencing to allow the defense time to respond to this request.

---

[1] The United States has been in contact with these parents throughout out the proceedings. Several parents were interviewed in connection with the investigation, the parents have been apprised of, and consulted about, the plea in this matter, and have been invited by the United States to submit written impact statements or to apprise the United States if they wished to address the Court at sentencing. No written impact statements had been previously provided. Last night, the United States learned via email that several parents wished to address the Court during the sentencing of this matter, and, as a result, submits this memorandum on the issue.

## Facts[2]

### A. The Offense

On February 7, 2014 FBI agents from Worcester assisted FBI agents from Albany NY during the execution of federal search and arrest warrant targeting the conduct of the defendant's son, Brian Belanger. Specifically, the defendant's son Brian Belanger, was alleged to have used the Playstation III Online system to communicate with, and later entice, a 10 year old boy from the Northern District of New York to created pornographic movies of himself which had later been emailed to Brian.

As the search of her home was conducted that morning, Donna was interviewed by FBI agents. These agents were wearing raid gear identifying them as FBI agents, specifically identified themselves to the defendant as FBI agents, and, informed the defendant during the intereview that it was against federal law to lie to FBI agents. Among many other questions, Donna was asked whether she was aware of any prior claims that her son had sexually assaulted other minor children. Donna was also asked if Brian had ever had unsupervised contact with the children in the day care. Donna adamantly denied it.

In response to questioning about prior alleged sexual assaults, Donna honestly reported that her day care had been closed in June 2012 subsequent to allegations that Brian had sexually assaulted a child that had been in her care (Juvenile Victim #1 ("JV-1")). Donna did not, however, disclose that in approximately 2005, Brian had tied a six year old male neighbor's hands behind his back, fondled the boy's genitals, and, in the words of the six year old boy, as related by his mother, "hurt him," and "humped" him from behind.

Hours after the FBI had left Donna's residence, FBI agents learned that Brian had made

---

[2] These facts are drawn from those stated in the Rule 11 proceedings.

post-Miranda admissions to the agents transporting him to NY that Brian had sexually assaulted children from his mother's day care and had admitted to having molested a six year-old neighbor some ten years prior.   Agents returned to Donna's home for a second interview early that afternoon, and during this second interview, Donna admitted that there had been an incident where Brian had sexually assaulted a neighbor's six year old child in 2005.   Donna claimed to have forgotten that incident at the time of the morning interview.   Donna continued to adamantly deny that Brian has ever had unsupervised contact with the children in her care.

A third audio/video recorded interview was conducted that night by the Worcester Police Department.   In that recorded interview, Donna admitted that there would be occasions while Brian would be alone with children from the day care in his room while he and the children were playing video games.

At a trial, the government would have introduced the testimony of the mother of the six year old child whom Brian had sexually assaulted in 2004 or 2005 who, in addition to relating what she had told this defendant about the assault, would testify that she and Donna had reached an agreement that the matter would not be reported to the police if the defendant and her husband agreed to secure counselling for Brian.

The government could also offer testimony of JV#1 and JV#2, a second alleged victim who attended the day care, concerning the sexual assaults upon them by Brian.   These sexual assaults occurred when Brain had been permitted to have unsupervised contact with those victims.   In the case of JV#1, consistent with what Donna had acknowledged about Brian having unsupervised access to the children in his bedroom while playing video games, one of those victims had previously related to Worcester Police, without knowing of this admission, that JV-1 had been sexually assaulted in Brian's bed room while playing video games.

The government would have also offered testimony from former employees and acquaintances of Brian Belanger to establish that Brian had extensive unsupervised contact with the children in the day care.

### B. The Plea Agreement

Donna has pled guilty pursuant to a binding plea agreement pursuant to Fed. R. Civ. P. 11(c)(1)(C). Pursuant to that agreement, the parties have agreed to recommend a sentence of probation for a term of three years, a $1,000 fine, a $100 Special Assessment, and fifty hours of community service.

### Argument

### I.   The Parents Should Be Considered Crime Victims

The CVRA, 18 U.S.C. § 3771, provides crime victims with a number of rights in connection with criminal proceedings, including the "right to be reasonably heard at any public proceeding." 18 U.S.C. § 3771(a)(4). The CVRA defines "crime victim," in pertinent part, as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e).[3] The term "harm" includes not only pecuniary and bodily harm but also emotional and psychological harm. *See, for example, United States v. C.R.*, 792 F. Supp. 2d 343, 388 (E.D.N.Y. 2011) (parents "emotionally hurt" by exploitation of a child are "victims"); *see also* Fed. R. Crim. P. 32(d)(2)(B) (incorporating CVRA definition of crime victim and requiring the presentence report to include "information that assesses any financial, social, *psychological*, and medical impact on a victim.") (emphasis supplied).[4] In addition, a person need not be the target of

---

[3] The Federal Rules of Criminal Procedure incorporate the definition of "crime victim" found in § 3771(e). See Fed. R. Crim. P. 1(b)(12).

[4] Where the claim of emotional or psychological harm is not accompanied by physical or

the offense to be considered a "crime victim" as long as that person can show direct and proximate harm. *See C.R.*, 792 F. Supp. 2d at 388; *see also In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) ("'Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission.'" (quoting *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008) (per curiam) ("The CVRA [ ] does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document.  The statute, rather, instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties."))).

Courts construing the term "directly and proximately harmed" have often seen it as imposing a traditional tort causation requirement. *See, for example, United States v. Monsel*, 641 F.3d 528, 534-37 (D.C. Cir. 2011) (discussing proximate harm requirement for restitution under the CVRA in child exploitation context); *In re: Antrobus,* 519 F.3d 1123, 1125 (10th Cir. 2008) (looking to state common law principles to assess whether the parents of a murder victim could be heard in the prosecution against the person who illegally sold the firearm to the murderer and finding that there was not "proximate causation"); *United States v. Sharp*, 463 F.Supp. 2d 556, 563-67 (E.D.Va. 2006) (discussing direct and proximate cause standard of the CVRA and applying the traditional civil concept of "proximate causation").

---

pecuniary harm, the question of whether a putative victim has rights under the CVRA requires a fact-specific analysis. See Attorney General Guidelines for Victim and Witness Assistance at 9 (2011) ("The harm can be physical, emotional, or pecuniary. In the absence of physical or pecuniary harm, emotional harm may be presumed in violent cases where the individual was actually present during a crime of violence, or, if not present, received information about a violent act attempted against him or her. In all other cases, emotional harm should not be presumed in the absence of physical or pecuniary harm, but rather the existence of cognizable emotional harm should be determined on a factual, case-by-case basis.") (emphasis supplied).

To be considered a "crime victim" under the CVRA, a person must show that the offense was both a direct (*i.e.*, "but for") cause and a proximate (*i.e.*, "foreseeable") cause of the harm. *Id*. at 565 ("[f]oreseeability is at the heart of proximate harm; the closer the relationship between the actions of the defendant and the harm sustained, the more likely that proximate harm exists.") (citing *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 713 (O'Connor, J. concurring) ("Proximate causation is not a concept susceptible of precise definition. . . . We have recently said that proximate causation 'normally eliminates the bizarre' . . . and have noted its 'functionally equivalent' alternative characterizations in terms of foreseeability . . . and duty . . . . Proximate causation depends to a great extent on considerations of the fairness of imposing liability for remote consequences." (internal citations omitted))).   As is the case in virtually all other types of causation inquiries, the question of whether a federal offense caused direct and proximate harm to a person for purposes of the CVRA requires a fact specific analysis.[5]

Connecting this analysis back to the CVRA's definition of "crime victim," Donna's conduct should be viewed as both a "direct" and "proximate" cause of the harm to these parents as required under the CVRA. The United States recognizes the policy concern embedded in the CVRA that without some reasonable limitation on the definition of "crime victim," the statute would be unwieldy. Without a workable notion of proximate causation, the CVRA could trigger obligations on the Court and the United States to potentially limitless numbers of individuals who may have suffered only the slightest and most theoretical of harms. But in this case, the family

---

[5] *See also* 18 U.S.C.S. § 3771, Commentary ("The definition in theory is fairly straightforward, but it may become more complex, especially as concerns the meaning of proximate harm. Foreseeability is at the heart of proximate harm; the closer the relationship between the actions of the defendant and the harm sustained, the more likely that proximate harm exists. Determining who is a victim in a given case will always be a fact-specific analysis." (internal citation omitted)).

members who wish to speak can show a "proximate harm" that was reasonably foreseeable to Donna when she continued to operate her day care despite the knowledge of her son's prior sexual assault of a child.

*To be clear*, there is no claim that these parents' children were victimized. Nonetheless, it is equally clear and indisputable, that it would be foreseeable to Donna that these parents could suffer deep emotional distress from the concern and fear that the victimization of their children might have occurred. The harm they have suffered is neither remote nor hypothetical.

Accordingly, the Court should consider them "crime victims" under the CVRA, and they should be permitted to submit victim impact statements and to allocute at Donna's sentencing. *Contra, United States v. Grieg*, 717 F.3d 212, 222 (1st Cir. 2013) (noting that the district court refused to recognize that members of the families of victims murdered by James "Whitey" Bulger were "crime victims" under the CVRA).

## II.     The Court Should Hear From These Parents as a Matter of Discretion

Alternatively, should the Court disagree, and hold that the families are not "crime victims" for purposes of the CVRA, it nevertheless should allow the family members to allocute at the sentencing. Even if an individual may not meet the statutory definition of "crime victim," nothing in the CVRA prohibits a court from providing that individual with participatory opportunities. *Grieg*, 717 F.3d at 222-223 (upholding the district court's decision to allow members of the families of victims murdered by James "Whitey" Bulger to allocute at the sentencing of Bulger's paramour for conspiring to harbor a fugitive). In *Greig,* the First Circuit began by noting the breadth of discretion afforded to the Court under 18 U.S.C. §3661 which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may

receive and consider for the purpose of imposing an appropriate sentence." *Greig*, 717 F.3d at 223. The Court found the statements of the victim's families to be "relevant to Greig's "background, character, and conduct" and therefore, properly heard, noting "[a] sentencing judge gets to conduct a broad inquiry when deciding what the appropriate sentence is for the crime the defendant committed." *Id.*

In short, regardless of whether they are formally considered "crime victims" under the CVRA, the family members should be able to provide statements to the Court as part of the sentencing.

                Respectfully submitted,

                CARMEN M. ORTIZ
                UNITED STATES ATTORNEY

By:   */s/ Mark J. Grady*
       Mark J. Grady
       Assistant U.S. Attorney

Dated: September 10, 2015

### Certificate of Compliance
The defendant's counsel opposing this request.
   /s/ Mark J. Grady
Mark J. Grady, Assistant U.S. Attorney

### Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).
   */s/ Mark J. Grady*
Mark J. Grady, Assistant U.S. Attorney

Dated: September 10, 2015